UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HERIBERTO RODRIGUEZ-ROSA,
     Petitioner,

     v.

STEPHEN SPAULDING,
     Respondent.

CIVIL ACTION NO.
19-11984-MBB

**MEMORANDUM AND ORDER RE:
RESPONDENT'S MOTION TO DENY
PETITIONER'S HABEAS PETITION
(DOCKET ENTRY # 11)**

**May 19, 2020**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss filed by respondent Stephen Spaulding ("respondent"), warden at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). (Docket Entry # 11).  Respondent moves for a dismissal of a 28 U.S.C. § 2241 ("section 2241") petition filed by petitioner Heriberto Rodriguez-Rosa ("petitioner"), an FMC Devens inmate, because: (1) he failed to exhaust administrative remedies; and (2) the Federal Bureau of Prisons ("BOP") properly calculated his sentence.  (Docket Entry # 11).

As set out in the petition, petitioner seeks to credit the time he spent serving a sentence imposed by the Commonwealth of Puerto Rico as time spent serving his 2005 federal sentence. (Docket Entry # 1).  Petitioner submits that: (1) the BOP should

designate the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico as a place of confinement for the federal sentence under 18 U.S.C. § 3621(b) ("section 3621(b)"); and (2) the BOP incorrectly calculated his federal sentence by failing to credit the amount of time served in MDC toward the federal sentence. (Docket Entry ## 1, 20).  Relying on 18 U.S.C. § 3585(b)(2) ("section 3585(b)(2)"), petitioner contends that his arrest for the Puerto Rico offense took place *after* his commission of the drug "offense for which [his] federal sentence was imposed" and, as a result, he was in federal custody at MDC.  (Docket Entry # 1, p. 6).

## FACTUAL BACKGROUND[1]

A.  Petitioner's Criminal History

On March 18, 2005, petitioner was arrested and charged with second degree murder and carrying a firearm without a license by authorities for the Commonwealth of Puerto Rico.  (Docket Entry # 12-1, pp. 1, 4, 7).  On December 1, 2005, the United States District Court for the District of Puerto Rico issued a writ of habeas corpus *ad prosequendum*.  (Docket Entry # 12-1, pp. 13-14).  The writ commands "the Warden of 'Complejo Correccional Las Cucharas' in Ponce, Puerto Rico, to deliver" petitioner "into the custody of the United States Marshal" until

---

[1]  The factual background includes legal principles applicable to the facts.

"termination of the proceedings" in <u>United States v. Rodriguez Rosa</u>, Crim. No. 05-417-PG ("the federal case").[2]  (Docket Entry # 12-1, pp. 13-14).  On December 2, 2005, the United States Marshal Service ("USMS") removed petitioner from the Complejo Correccional Las Cucharas facility in Ponce under the writ of habeas corpus *ad prosequendum* for prosecution on various drug charges in the federal case.  (Docket Entry # 12-1, p. 2, ¶ 5) (Docket Entry # 12-1, pp. 13-14, 16).  The charges included conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  (Docket Entry # 12-1, p. 16).  From December 2, 2005 to February 28, 2008, petitioner was housed at MDC "pursuant to [the] writ of habeas corpus ad prosequendum."[3]  (Docket Entry # 23-2, p. 1, ¶ 4).

Ordinarily, a state sovereign does not intend to relinquish custody of a state prisoner by loaning him to federal authorities under a writ of habeas corpus *ad prosequendum*.  <u>See</u>

---

[2]  Petitioner was arrested the next day.  <u>United States v. Rodriguez-Rosa</u>, Crim. No. 05-417-PG (Docket Entry # 4); (Docket Entry # 12-1, p. 29).

[3]  Whereas Kneyse Martin ("Martin"), a management analyst at the BOP's Designation and Sentence Computation Center, calculates this time period as 819 days and a United States Marshals Service prisoner tracking system calculates this time period as 822 days, the difference is not material to the substance of the section 2241 petition.  (Docket Entry # 23-2, p. 1, ¶ 4) (Docket Entry # 12-1, p. 30).  Together with a four-day period in late March 2015 at MDC, petitioner requests 822 days of credit for the time spent at MDC in Puerto Rico.  (Docket Entry # 1) (Docket Entry # 20, p. 3) (Docket Entry # 12-1, p. 30) (Docket Entry # 20-1, p. 4).

Jimenez v. Warden FDIC, Fort Devens, Mass., 147 F. Supp. 2d 24, 27 (D. Mass. 2001) (citing case law in majority of circuit courts) ("Jimenez I"; accord United States v. White, 874 F.3d 490, 507 (6th Cir. 2017) (when state sends prisoner to "federal authorities pursuant to such a writ, 'the prisoner is merely "on loan" to the federal authorities,' with the State retaining primary jurisdiction over the prisoner") (internal citation omitted); Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992) (when prisoner "appears in federal court pursuant to a writ *ad prosequendum*[,] he is merely 'on loan' to federal authorities").  Whereas the writ employs the term "custody," "if a prisoner is serving a state sentence when he is produced for a federal prosecution, the writ *temporarily* transfers him to federal custody for prosecution but the state retains *primary* custody for the purpose of calculating his state sentence." Lugo v. Hudson, 785 F.3d 852, 854-55 (2d Cir. 2015) (emphasis added).  Hence, under the circumstances presented, the Commonwealth of Puerto Rico did not relinquish primary custody of petitioner by virtue of transferring him pursuant to the writ of habeas corpus *ad prosequendum*.

On August 30, 2007, the district judge ("the sentencing judge") in the federal case sentenced petitioner to a 216-month term of imprisonment with a five-year term of supervised release on the conspiracy to possess with intent to distribute cocaine

charge (Count One) and dismissed the remaining charges on the government's motion ("the federal sentence").  (Docket Entry # 12-1, p. 2, ¶ 6) (Docket Entry # 12-1, p. 16); see United States v. Rodriguez-Rosa, Crim. No. 05-00417-PG (Docket Entry # 1096). The judgment was silent as to whether the federal sentence would run concurrent or consecutive to any impending sentence in the Commonwealth of Puerto Rico proceeding.  (Docket Entry # 12-1, p. 2, ¶ 6) (Docket Entry # 12-1, pp. 16-20).

A few days later on September 4, 2007, the Commonwealth of Puerto Rico Superior Court (Ponce Region) ("the Commonwealth court") sentenced petitioner to a 12-year term of imprisonment for second degree murder and carrying a firearm without a license  ("the Commonwealth sentence").  (Docket Entry # 12-1, p. 2, ¶ 7).  The Commonwealth court also sentenced petitioner to shorter, concurrent terms on several other charges in the case.[4] (Docket Entry # 12-1, p. 2, ¶ 7).

Because "primary jurisdiction resides with the sovereign that first arrests a defendant," the Commonwealth court had custody of petitioner at the outset irrespective of the subsequently imposed federal sentence, which, in turn, preceded the Commonwealth sentence.  Thomas v. Warden, Fed. Corr. Inst.,

---

[4]  Petitioner and respondent agree that the Commonwealth court ordered its sentence to run concurrently to the federal sentence.  (Docket Entry # 1, p. 2) (Docket Entry # 12, p. 3).

Berlin, N.H., No. 13-CV-259-LM, 2015 WL 502144, at *4 (D.N.H. Feb. 5, 2015) (citation omitted); accord Johnson v. Gill, 883 F.3d 756, 764-765 (9th Cir.), *cert. denied sub nom.* Johnson v. Copenhaver, 139 S. Ct. 251 (2018); United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005) (as between "state and federal sovereigns, primary jurisdiction over" a defendant "determined by which one first obtains custody of, or arrests, the person"); Thomas v. Whalen, 962 F.2d at 361 n.3; Jimenez I, 147 F. Supp. 2d at 27.  On February 28, 2008, a federal detainer was lodged against petitioner with the Puerto Rico Department of Corrections regarding the 216-month federal sentence.  (Docket Entry # 12-1, p. 29).

On October 19, 2009, while serving the Commonwealth sentence, the sentencing judge in the federal case allowed petitioner's motion to reduce the federal sentence under 18 U.S.C. § 3582(c)(2) ("section 3582(c)(2)").  Specifically, the sentencing judge reduced petitioner's federal sentence from the 216-month term of imprisonment to a 173-month term of imprisonment.  (Docket Entry # 12-1, p. 25) (Docket Entry # 12-1, p. 2, ¶ 8).  On June 7, 2016, petitioner filed another motion to reduce the federal sentence under section 3582(c)(2).  The sentencing judge also allowed this motion and lowered the 173-month term of imprisonment to a 139-month term of imprisonment.  (Docket Entry # 12-1, p. 35) (Docket Entry # 12-1, p. 3, ¶ 11).

In January 2019, the sentencing judge denied petitioner's request to have the federal sentence run concurrently with the Commonwealth sentence.   See United States v. Rodriguez-Rosa, Crim. No. 05-417-PG (Docket Entry # 2263).

Meanwhile on March 1, 2015, petitioner completed serving the 12-year Commonwealth sentence.   (Docket Entry # 12-1, p. 2, ¶ 9).   The Commonwealth sovereign's primary jurisdiction ended upon completion of the Commonwealth sentence.   See Johnson v. Gill, 883 F.3d at 765 ("sovereign's priority terminates when the sentence expires, charges are dismissed, or the prisoner is allowed to go free"); Jimenez I, 147 F. Supp. 2d at 28 ("primary jurisdiction over a state prisoner ends and federal custody over him commences" when "state authorities relinquish him on satisfaction or extinguishment of the state obligation").   Martin attests that, "Petitioner remained in the custody of the Commonwealth of Puerto Rico until March 26, 2015, at which time the USMS took custody of [petitioner] for service of his federal sentence."   (Docket Entry # 12-1, p. 2, ¶ 9) (Docket Entry # 12-1, p. 30).

On March 26, 2015, petitioner's federal sentence commenced. See 18 U.S.C. § 3585(a) ("section 3585(a)"); Capaldo v. Winn, Civil Action No. 03-40204-PBS, 2004 WL 1454408, at *3 (D. Mass. Apr. 27, 2004) ("'federal sentence does not commence until the Attorney General receives the defendant into his custody for

service of the federal sentence'") (quoting Jimenez I, 147 F.
Supp. 2d at 27); see Newman v. Cozza-Rhodes, 526 F. App'x 818,
821 (10th Cir. 2013) (under section 3585(a), "federal sentence
commenced on August 10, 2010, when Newman was released from
state parole and the federal marshals took him into custody to
serve his federal sentence") (unpublished).  Under section
3585(b), the BOP gave petitioner "prior custody credit for the
time period from March 2" to March 25, 2015.  (Docket Entry #
12-1, p. 3, ¶ 15).  As of November 15, 2019, his projected
release date, if he meets all anticipated good conduct time
requirements, is January 14, 2025.[5]  (Docket Entry # 12-1, p. 3,
¶ 15) (Docket Entry # 12-1, p. 47).

B.   Sentencing Requests and Attempted Appeals

On July 14, 2015, while serving the federal sentence and
incarcerated at the Federal Correctional Institution in Coleman,
Florida ("FCI Coleman"), petitioner "asked the BOP to reconsider
his [federal] computation in light of" Barden v. Keohane, 921
F.2d 476, 483 (3d Cir. 1990) ("Barden").  (Docket Entry # 12-1,
pp. 3-4, ¶¶ 17-18) (Docket Entry # 20-1, p. 2).  Barden allows
the BOP to designate nunc pro tunc a state prison as the
designated place of confinement to serve a federal sentence if

---

[5]  Petitioner's full-term release date, without good time credit,
is October 1, 2026.  (Docket Entry # 12-1, p. 3, ¶ 15) (Docket
Entry # 12-1, p. 49).

the federal sentencing court is silent as to whether the federal sentence runs concurrently with the state-court sentence.  See Rogers v. United States, 180 F.3d 349, 356 (1st Cir. 1999) (recognizing existence of authority that BOP may designate place of confinement *nunc pro tunc* when "federal sentencing court is silent as to whether a federal sentence should run concurrently with 'a not-yet-imposed state sentence'") (quoting McCarthy v. Doe, 146 F.3d 118, 119 (2d Cir. 1998), and citing Barden, 921 F.2d at 483); Barden, 921 F.3d at 483; Capaldo, 2004 WL 1454408, at *3 (when "BOP designates a state facility for the service of the federal sentence, the federal sentence may commence") (citations omitted); accord Jimenez I, 147 F. Supp. 2d at 28 (when "federal court sentences a defendant who is in state custody at the time of sentencing, . . . 'federal sentence may commence if . . . BOP agrees to designate the state facility for service of the federal sentence'") (internal citations omitted).

Petitioner's July 14, 2015 informal request was specific and tracks the substance of the section 2241 petition.  It asked FCI Coleman staff to credit the time petitioner spent serving the Commonwealth sentence toward the federal sentence for the December 2, 2005 to February 28, 2008 time period at MDC. (Docket Entry # 20-1, p. 2).  It pointed out that, "The federal sentence was imposed 'First' on August 30, 2007," and the Commonwealth "sentence was subsequently imposed on September 4,

2007." (Docket Entry # 20-1, p. 2). Finally, it recognized that the Commonwealth court ordered the Commonwealth sentence to run concurrently with the federal sentence. (Docket Entry # 20-1, p. 2).

Seven days later on July 21, 2015 and referencing "Barden," an FCI Coleman staff member responded to the request in writing by advising petitioner that the request was "sent to Grand Prairie. This takes a <u>long</u> time so be patient!" (Docket Entry # 20-1, p. 2). The BOP's Designation and Sentence Computation Center ("DSCC") is in Grand Prairie, Texas. (Docket Entry # 12-1, p. 32). Consistent with the substance of the request, the FCI Coleman staff member treated it as a request for informal resolution under <u>Barden</u> and forwarded the informal resolution request to DSCC.

The DSCC conducted a comprehensive review of the request. First, on July 31, 2015, the Chief of the DSCC ("DSCC Chief") wrote to the sentencing judge seeking clarification regarding whether he intended petitioner's federal sentence to run consecutively or concurrently with the Commonwealth sentence. (Docket Entry # 12-1, p. 2, ¶ 10) (Docket Entry # 12-1, pp. 32-33). The letter outlined the dates of the federal and the Commonwealth sentences, noted the primary jurisdiction of the Commonwealth of Puerto Rico and the federal custody under the writ, and stated that the Commonwealth court ordered the

Commonwealth "sentence to be served concurrent to the federal sentence." (Docket Entry # 12-1, p. 32). The letter also explained petitioner's request to designate the state institution, i.e., MDC, to serve the federal sentence, cited the Supreme Court's decision in Setser v. United States, 566 U.S. 231 (2012) ("Setser"),[6] and informed the court that the BOP would engage in a review of the factors in section 3621(b) if it did not receive a response to the letter in 60 days. (Docket Entry # 12-1, p. 33). The BOP DSCC Chief did not receive a response. (Docket Entry # 12-1, p. 2, ¶ 10).

Accordingly, a BOP official undertook an analysis of various factors under 18 U.S.C. § 3621(b) ("section 3621(b)"), including the nature of the crimes, the lack of relatedness of the "state and federal sentences," petitioner's "prior criminal history," his "institutional disciplinary history," and the absence of a response from the sentencing judge to the July 31, 2015 letter. (Docket Entry # 12-1, pp. 3-4, ¶ 17) (Docket Entry # 12-1, p. 65). The BOP official made a final determination on October 5, 2015, to deny retroactive, nunc pro tunc designation based on the factors in section 3621(b). (Docket Entry # 12-1, p. 65).

---

[6] Setser held that a federal district court has the discretion to order a federal sentence to run consecutively to an anticipated state sentence not yet imposed. Id. at 244.

On the same day, Andrew Roush ("Roush"), a BOP correctional programs specialist at the time, wrote a letter to petitioner informing him about the denial. (Docket Entry # 23-1, p. 2, ¶ 4) (Docket Entry # 23-1, p. 5). In particular, Roush informed petitioner that the DSCC considered "the relevant factors" in petitioner's case, namely, the factors implicated under section 3621(b)(2), (3), and (4), and "determined that a retroactive concurrent designation is not appropriate." (Docket Entry # 23-1, p. 5).

Although petitioner argues that he did not receive the October 5, 2015 letter (Docket Entry # 20, p. 9), the *evidence* is to the contrary. See Thornton v. Daniels, 554 F. App'x 762, 767 (10th Cir. 2014) (rejecting petitioner's argument that prison official's refusal to provide petitioner proper forms to exhaust grievance rendered exhaustion futile because he did not "provide[] any evidence or record support for any claim that he was prevented from providing such materials or information") (unpublished). First, Roush states by affidavit that, "the letter would have been sent to Petitioner via regular mail" in accordance with the usual practice. (Docket Entry # 23-1, p. 3, ¶ 6). Second, BOP's computerized database, SENTRY, reflects an entry on October 5, 2015 of "'nunc pro tunc credit denied.'" (Docket Entry # 23-1, pp. 2-3, ¶¶ 2, 7). After entry into the SENTRY system on October 5, 2015, "Petitioner's Unit Team, Case

12

Management Coordinator, and" almost any BOP employee could view the letter. (Docket Entry # 23-1, p. 3, ¶ 7). Third, petitioner's electronic inmate central file ("e-ICF") includes a copy of the letter. (Docket Entry # 23-1, p. 2, ¶ 4). "The e-ICF system was developed and deployed in early 2018" and the letter would have been imported into e-ICF from a shared drive at DSCC at that time. (Docket Entry # 23-1, p. 2, ¶ 5). Here again, petitioner's "Unit Team" and his "Case Management Coordinator" as well as "Correctional Systems Department" staff "at any BOP institution" could access the letter and provide petitioner a copy "at any time." (Docket Entry # 23-1, p. 3, ¶ 6). In the context of this evidence, the July 21, 2015 response ("This takes a <u>long</u> time so be patient!") and petitioner's May 14, 2016 inmate request (stating he sent a letter on April 21, 2015 regarding the concurrent time and was "still wait[ing] for the answer") do not warrant a contrary conclusion.[7]

BOP regulations establish a 20-day deadline for an inmate to submit a formal administrative remedy request after the date of the informal resolution. 28 C.F.R. § 542.14(a). A review of "[p]etitioner's SENTRY Administrative Remedy Generalized Retrieval history" evidences that he did not submit a timely

---

[7] Petitioner does not request an evidentiary hearing on the issue. (Docket Entry ## 1, 20); <u>see</u> <u>Logan v. Gelb</u>, 790 F.3d 65, 70 (1st 2015) (finding argument "waived" because petitioner "failed to include [it] in his habeas petition").

request within the 20-day time period.  (Docket Entry # 12-1, p. 4, ¶ 19).

On May 14, 2016, petitioner submitted another inmate request to staff at FCI Coleman.  The request asserts that he sent a letter on April 21, 2015 "to Record" asking for an explanation "about [his] concurrence [sic] time to State Prison" to "'complet[e]' the Federal Prison" and was "still wait[ing] for the answer."  (Docket Entry # 20-1, p. 6).  On June 1, 2016, an FCI Coleman staff member responded to the request by asking for additional information because the staff member did "not know what state sentence" petitioner was "referring to" because he did not "give any dates or paperwork."[8] (Docket Entry # 20-1, p. 6).  The response also states that petitioner "receive[d] 398 days jail credit from the time" he was "in Guaynabo," up "to the date [his] sentence started on 10-18-2010."  (Docket Entry # 20-1, p. 6).  By affidavit, Martin posits that the response "was an error" because the stated facts ("398 days jail credit" and a sentence start-date of October 18,

---

[8] Petitioner alleges he was notified verbally that "Grand Prairie DSCC" had not responded at the time he filed the above-noted submission on May 14, 2016.  (Docket Entry # 20, pp. 7-8).  Petitioner does not provide evidence, such as an affidavit, to support this allegation.  See Thornton v. Daniels, 554 F. App'x at 767.

2010) do not apply to petitioner or are not shown in his file.[9] (Docket Entry # 20-1, p. 6) (Docket Entry # 23-2, p. 1, ¶ 3).

On October 7, 2016, petitioner submitted another inmate request, this time asking staff at FCI Oakdale for credit for the "federal time [he] did from Dec[ember] 2, 2005 to February 28, 2008."[10]  (Docket Entry # 20-1, p. 8).  The request points out his arrest on federal charges on December 1, 2005, and subsequent incarceration at MDC until February 28, 2008, when he "start[ed] doing time on a state case."  (Docket Entry # 20-1, p. 8).  A staff member signed the request on October 13, 2016, which is stamped as scanned to DSCC on the same date.[11]  (Docket Entry # 20-1, p. 8).

More than two years later on January 13, 2019, petitioner submitted a third inmate request, this time to staff at FMC Devens, where he was incarcerated.  (Docket Entry # 20-1, p. 12); (Docket Entry # 23-2, p. 3) (identifying FMC Devens as

---

[9]  Petitioner asserts that: he provided the requested "paperwork a year earlier"; his placement in administrative segregation at FCI Coleman at the time prevented him from providing documentation; and the "response is not supported by any documentary evidence."  (Docket Entry # 20, p. 4).
[10]  Petitioner was housed at FCI Oakdale during this time period. (Docket Entry # 23-2, p. 3) (Docket Entry # 20, p. 8).
[11]  It is unclear if petitioner received a response to this request.  Petitioner asserts, again without providing documentary evidence or an affidavit, that the staff member notified petitioner that "FCI Oakdale had contacted DSCC," that DSCC had received the July 2015 request, and that "as of this date" (October 13, 2016) the request had "not been resolved." (Docket Entry # 20, p. 8).

petitioner's assigned facility).  The request again asked for credit on the federal sentence for the 818 days petitioner served at MDC as well as four additional days in March 2015.  A staff member at FMC Devens denied the request because it "has already been addressed several times."  (Docket Entry # 20-1, p. 12).  The request specifically explained, "Your nunc pro tunc request was denied in 2015."  (Docket Entry # 20-1, p. 12).

In February 2019, petitioner "submit[ed] a Request for Administrative Remedy," see 28 C.F.R. § 542.14(a), to the Warden at FMC Devens, i.e., respondent.[12]  (Docket Entry # 12-1, p. 4, ¶ 19) (Docket Entry # 12-1, p. 70) (Docket Entry # 20-1, p. 26).  Dated February 14, 2019, the administrative remedies office at FMC Devens received this BP-9 on February 20, 2019.  (Docket Entry # 12-1, p. 70) (Docket Entry # 20-1, pp. 18, 26).  The BP-9 requested credit on the federal sentence "from September 6, 2005, until March 26, 2015" for time served on the Commonwealth of Puerto Rico offense for murder on the basis that the murder conviction was "relevant conduct" for the federal drug conviction "pursuant to U.S.S.G. 5g1.3(b)(1) or (2)."  (Docket Entry # 20-1, p. 26) (Docket Entry # 12-1, p. 70) (describing petitioner's submission as "request[ing] jail time").  On February 28, 2019, the administrative remedy coordinator

---

[12]  The appropriate form for the request is known as a "BP-9." 28 C.F.R. § 542.14(a).

rejected the BP-9 as "untimely" because it was received more than 20 days after the "event complained about," i.e., the denial of the initial informal request.[13]  (Docket Entry # 20-1, p. 29); 28 C.F.R. § 542.14(a) (if informal request is not resolved, inmate must submit BP-9 20 days after date which forms "basis for the Request occurred").

From March to July 2019, petitioner made "submissions to the Northeast Regional Director and the Office of General Counsel."  (Docket Entry # 12-1, p. 4, ¶ 19) (Docket Entry # 12-1, pp. 70-72) (Docket Entry # 20-1, pp. 30, 32, 33, 35-39).  The submissions were rejected as "untimely and filed at the inappropriate level."  (Docket Entry # 12-1, p. 4, ¶ 19).  More specifically, petitioner's submissions to the Northeast Regional Director in March, April, and June 2019 were rejected as filed at the inappropriate level.[14]  (Docket Entry # 20-1, pp. 22, 30, 32, 35-38) (Docket Entry # 12-1, p. 4, ¶ 19) (Docket Entry # 12-1, pp. 70-71).  The BOP's Office of the General Counsel rejected

---

[13]  The rejection additionally reasons that petitioner already "requested this while at [FCI] Coleman and DSCC denied" it "on 10-5-2015."  (Docket Entry # 12-1, p. 4, ¶ 19) (Docket Entry # 12-1, p. 70) (Docket Entry # 20-1, pp. 18, 29).

[14]  The March submission asserted the 20-day time period did not apply because the matter was a "sentencing hearing" and that, under Setser, BOP lacked authority to decide whether a sentence ran concurrently or consecutively "[w]hen a judgment is silent." (Docket Entry # 20-1, p. 30).  The April and June submissions requested credit for time spent in jail.  (Docket Entry # 20-1, pp. 22, 36, 38).

petitioner's July 10, 2019 appeal seeking jail-time credit on July 25, 2019, concurred with the rationale of the Northeast Regional Office, and considered the request as an untimely "late filing." (Docket Entry # 12-1, p. 72) (Docket Entry # 12-1, p. 4, ¶ 19) (Docket Entry # 20-1, p. 39). Computerized records maintained by the BOP reflect that the General Counsel's Office also advised petitioner that "if staff provide a memo stating the late filing was not your fault, then re-submit [the request] to the level of the original rejection," i.e., FMC Devens. (Docket Entry # 12-1, p. 72) (Docket Entry # 12-1, pp. 1, 4, ¶¶ 3, 19) (Docket Entry # 20-1, p. 39). There is little, if any, indication that petitioner obtained such a memorandum and resubmitted the request with the memorandum, as suggested by the General Counsel's Office. See 28 C.F.R. § 542.15(a) (recognizing that "time limits *may* be extended" if "inmate demonstrates a valid reason for delay") (emphasis added); Custard v. Oliver, Civil Action No. 15-01198-GPG, 2015 WL 9185746, at *4 (D. Colo. Dec. 17, 2015) (administrative remedies not futile when petitioner's appeal "was rejected for failure to provide a copy of the DHO decision, . . .; petitioner was directed to refile the appeal" with "DHO's decision; and, petitioner failed to resubmit his appeal with a copy of the DHO decision") (paraphrasing Staples v. Chester, No. 09-3267, 370 Fed. App'x 925, 929-930 (10th Cir. 2010) (unpublished)).

18

In or around August 2019, petitioner submitted two inmate requests to staff for informal resolutions of the jail credit toward the federal sentence for the time served at MDC.  (Docket Entry # 20-1, pp. 10, 27).  The requests did not ask for a memorandum to excuse the late filing or refer to the July 2015 initial request.  (Docket Entry # 20-1, pp. 10, 27).  Correctional staff denied one of the requests on August 8, 2019, and the other on August 14, 2020, on the basis that DSCC already determined the matter when it denied petitioner's eligibility for credit in 2015.[15]  (Docket Entry # 20-1, pp. 10, 27).  Petitioner filed this action in September 2019.

## DISCUSSION

## I.  Administrative Exhaustion

Respondent seeks to dismiss the section 2241 petition for failure to exhaust administrative remedies.  A section 2241 petition provides the appropriate vehicle to challenge the execution of a sentence.  See United States v. DiRusso, 535 F.2d 673, 674-76 (1st Cir. 1976); Monahan v. Winn, 276 F. Supp. 2d 196, 204 (D. Mass. 2003); Jimenez v. United States, Case Nos. 99 Civ. 10798(SAS), 97 CR 752(SAS), 2000 WL 28164, at *2 (S.D.N.Y. Jan. 14, 2000) (section 2241 is proper vehicle for petitioner to

---

[15]  In a section for a unit manager's comments or assistance, a Unit Manager wrote that, "This matter is considered repetitive." (Docket Entry # 20-1, p. 27).

challenge BOP decision to deny credit to federal sentence for time served in federal detention facility) ("Jimenez II").

A section 2241 petition seeking sentence credit under section 3585(b) is subject to dismissal if the prisoner fails to exhaust his administrative remedies with the BOP.  See Fields v. Tatum, Case No. 15-cv-374-LM, 2017 WL 4232521, at *3 (D.N.H. June 26, 2017); Jimenez II, 2000 WL 28164, at *2 (stating it is "only after administrative remedies are exhausted under these regulations that a prisoner can file" section 2241 petition "seeking judicial review of any jail-time credit determination"); accord Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001) ("federal prisoners must exhaust their administrative remedies prior to filing a petition for habeas relief"); Rogers, 180 F.3d at 358 (request for credit for prior custody must be made to BOP first).  The BOP has the authority to award a defendant credit toward the service of a term of imprisonment for time spent in official detention prior to the date the sentence commences "as an administrative remedy, see 28 C.F.R. § 542.10, .11(a), subject to ultimate judicial review by habeas petition under 28 U.S.C. § 2241."  United States v. Stebbins, 523 F. App'x 1, 4 (1st Cir. 2013) (citing Rogers, 180 F.3d at 358) (unpublished); see Fields v. Tatum, 2017 WL 4232521, at *3 (citing Stebbins, 523 F. App'x at 4, in adjudicating section 2241 petition seeking sentence

credit for time spent incarcerated in Tennessee jail); 18 U.S.C.
§§ 3585(b), 3621(b).

The BOP's administrative remedies program codified in 28
C.F.R. §§ 542.10 to 542.19 ("section 542") details the process
for appropriately appealing a sentence calculation or
designating a state prison as the place of confinement for a
federal sentence.  See Jimenez, 2000 WL 28164, at *3.  These
"[p]rocedures include the completion of BOP forms referenced in
the regulations (BP-9, 10, and 11) which have been created
specifically for" such complaints.  Id.  A federal prisoner must
comply with the BOP's administrative remedy process within the
required time parameters; otherwise, the remedies are not
considered exhausted.  See Dunfee v. Barry, Civil Action No. 17-
40108-DHH, 2018 WL 4571659, *2-3 (D. Mass. Sept. 24, 2018)
(dismissing complaint for failure to exhaust section 542
remedies because inmate did not appeal to BOP's Office of
General Counsel with BP-11 form) (citing Acosta v. United States
Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006)), appeal
dismissed, 2019 WL 1858264 (Jan. 18, 2019); Jimenez II, 2000 WL
28164, at *3; accord Rogers, 180 F.3d at 357; Lopez v. Keffer,
Civil Action No. 4:12-CV-679-Y, 2013 WL 765330, at *2 (N.D. Tex.
Jan. 30, 2013) (administrative remedies in section 542 not
"exhausted until the inmate's claim has been filed at all levels
and has been denied at all levels").  More broadly, "[p]roper

exhaustion demands compliance with an agency's *deadlines* and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) (addressing administrative law of exhaustion in general) (emphasis added).  If properly followed, the process fosters development of a factual record and gives the BOP an opportunity to rectify overlooked errors.  Spor v. Warden, Civil Action No. 1:16-05310, 2017 WL 1078188, at *3 (S.D. W. Va. Jan. 25, 2017) ("Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court."); accord Collins v. Warden, Civil Action No. 1:19-CV-1591-P, 2020 WL 864189, at *1 (W.D. La. Jan. 24, 2020) (purpose of exhaustion "'is to permit the federal agency being challenged to correct its own error without court intervention'") (citation omitted), *report and recommendation adopted*, 2020 WL 868057 (W.D. La. Feb. 20, 2020).

The four-step process detailed in section 542 begins with the inmate initiating an informal complaint with prison staff, wherein the prisoner details his issue and requests relief.  28 C.F.R. § 542.13(a); see Dunfee v. Barry, 2018 WL 4571659, at *2 (federal regulations set out "four-step grievance procedure," which "inmate initiates . . . by presenting an issue of concern informally to staff") (citing 28 C.F.R. § 542.13(a)); Taylor v.

United States Bureau of Prisons, No. 5:10cv194/RS/CJK, 2012 WL
1549925, at *4 (N.D. Fla. Mar. 26, 2012) ("BOP provides a four-
level administrative grievance procedure for prisoner
complaints").  The initial level requires the inmate to present
the issue informally to prison staff, who attempt to resolve the
issue.  28 C.F.R. § 542.13(a) ("inmate shall first present an
issue of concern informally to staff"); Dunfee v. Berry, 2018 WL
4571659, at *2.[16]

"If not satisfied with the response, the inmate may file a
formal written complaint with the warden of his institution."
Taylor, 2012 WL 1549925, at *4 (citing section 542.14); (Docket
Entry # 12-1, p. 4, ¶ 19).  The deadline to submit the request
on the appropriate form, namely, the BP-9 form, is 20 days from
the date which provides the basis for the BP-9 request.  28
C.F.R. § 542.14(a); Dunfee v. Barry, 2018 WL 4571659, at *2 (if
"complaint is not or cannot be resolved informally, a prisoner
must submit a formal written Administrative Remedy Request, on a
BP-9 form, within twenty days of the event triggering his
complaint") (citing section 542.14(a)).  If the inmate is
dissatisfied with the response from the warden to the inmate's
BP-9 form, the inmate has 20 calendar days to submit an "Appeal

---

[16]  The submission of a BP-9 form is the second step in the
administrative process.  See 28 C.F.R. § 542.14(a); Dunfee v.
Barry, 2018 WL 4571659, at *2.

to the Regional Director" on a BP-10 form.  28 C.F.R. § 542.15;
see Taylor, 2012 WL 1549925, at *4 ("warden's response may be
appealed to the Regional Director, 28 C.F.R. § 542.15(a)").  If
not satisfied with the regional director's response to the BP-10
form, the inmate may file an "Appeal to the General Counsel" on
a BP-11 form within 30 calendar days.  28 C.F.R. § 542.15;
Taylor, 2012 WL 1549925, at *4 ("Regional Director's response
may be appealed to the General Counsel for the BOP . . . within
30 calendar days") (citing 28 C.F.R. § 542.15(a)).  Filing an
appeal with "the General Counsel is the final administrative
appeal," 28 C.F.R. § 542.15(a), and completes the administrative
exhaustion process.  See Lopez v. Keffer, 2013 WL 765330, at *2
("[a]dministrative remedies" not "exhausted until the inmate's
claim has been filed at all levels" and "denied at all levels").

     Here, the BOP official denied petitioner's July 2015
informal request seeking credit for time served in jail in the
Commonwealth of Puerto Rico on October 5, 2015.  (Docket Entry #
20-1, p. 2) (Docket Entry # 12-1, p. 65).  Roush then wrote a
letter to plaintiff communicating the denial on the same day.
(Docket Entry # 23-1, p. 5).  If not satisfied with this
response denying credit for the time served in the Commonwealth
facility, it was incumbent upon petitioner to submit a formal
administrative remedy request on a BP-9 form within 20 calendar
days to the Warden at FCI Coleman, where petitioner was

incarcerated at the time.   28 C.F.R. §§ 542.13(a), 542.14(a);
Taylor, 2012 WL 1549925, at *4.   Petitioner received this
response and failed to submit a BP-9 (or any other formal
complaint) to the Warden within the 20-day time period.
Petitioner does not fall within a listed exception to this
filing requirement at the institution, see 28 C.F.R. §
542.14(d), and there is no indication he obtained a
discretionary waiver from the Warden or an administrative remedy
coordinator at FCI Coleman.   See 28 C.F.R. § 542.13(b).   He did
not request an extension of the filing deadline and the evidence
does not support any of the valid reasons for a delay.[17]   See 28
C.F.R. § 542.14(b).

---

[17] With respect to the valid reasons for a delay that warrant an
extension of time in section 542.14(b), they do not apply.
Petitioner does not provide documentation or other evidence to
show "an extended period in-transit" when he "was separated from
documents" that he "needed to prepare" an appeal of the October
5, 2015 denial.   28 C.F.R. § 542.14(b); see Thornton v. Daniels,
554 F. App'x at 767.   There is no evidence that petitioner could
not request access to his "Administrative Remedy indexes and
responses," 28 C.F.R. § 542.19, and he does not provide evidence
to support his assertion that staff told him "FCI Oakdale had
contacted DSCC" and that the July 2015 request "has not been
resolved." (Docket Entry # 20, p. 8); see fn. 11. Rather, the
evidence reflects that the October 5, 2015 denial letter was
part of petitioner's inmate profile on SENTRY. (Docket Entry #
23-1, p. 3, ¶ 7). Petitioner's additional contention that his
placement in "SHU" in 2016 restricted him from filing a BP-9
(Docket Entry # 20, pp. 7-8) (Docket Entry # 20-1, p. 6) is not
temporally relevant to his ability to file a BP-9 in October
2015.   Moreover, his SENTRY records and release history indicate
a transfer into segregation in February 2016 as opposed to
October 2015.   (Docket Entry # 23-2, p. 3).   Hence, he fails to
provide evidence to demonstrate "an extended period of time

The subsequent filings by petitioner at the inappropriate level or in an untimely manner, such as the untimely BP-9 submission on February 20, 2019, do not comply with the mandatory, step-by-step exhaustion procedure.  See 28 C.F.R. § 542.13(a), 542.14(a); Dunfee v. Barry, 2018 WL 4571659, at *2; Lopez v. Keffer, 2013 WL 765330, at *2; Taylor, 2012 WL 1549925, at *4.  Separately, they do not cure the initial misstep of not filing a timely appeal of the October 2015 denial.  More specifically, filing duplicate requests at inappropriate levels after the October 2015 denial does not rectify the initial failure to timely file a BP-9 for the October 5, 2015 denial.  See Washington v. Hodges, Case No. 12-CV-854-NJR-DGW, 2014 WL 5396188, at *8 (S.D. Ill. Oct. 22, 2014) (noting that filing "multiple grievances about the same incidents . . . would compel any agency to require strict compliance with rules of form").  Furthermore, in light of the discrete and singular nature of the failure to credit the sentence, filing duplicate and repetitive informal requests in May 2016, October 2016, January 2019, and August 2019 seeking to credit the time at MDC towards the federal sentence (Docket Entry # 20-1, pp. 6, 8, 10, 12) does not restart the 20-day time period.  See generally id.

---

during which [he] was physically incapable of preparing" a BP-9. 28 C.F.R. § 542.14(b).

"Even if this Court were to accept" petitioner's "contention that he never received a response to" the July 2015 request, the regulations instruct the inmate to "'consider the absence of a response to be a denial at that level.'" <u>Lockwood v. Fed. Bureau of Prisons</u>, No. 13 Civ. 8104(ALC), 2015 WL 4461597, at *3 (S.D.N.Y. July 21, 2015) (quoting 28 C.F.R. § 542.18).[18] Petitioner therefore failed to adhere to the time requirements in section 542.14(a) and, thus, did not properly exhaust his administrative remedies.

Petitioner next argues that he falls under all three exceptions to the exhaustion requirement in <u>Ross v. Blake</u>, 136

---

[18] The court in <u>Lockwood</u> explains that:

> Even if the Court were to accept Lockwood's contention that he never received a response to [repeatedly submitted BP-8] filings, that would not be enough to obviate the need to comply with the three remaining prerequisites. The failure of the BOP to address a BP-8 is a failure to resolve the issues raised therein, and an inmate must then submit a BP-9, or "Administrative Remedy Request," to the warden. *See* 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."). Therefore, Lockwood's admission that he abandoned the administrative grievance process because he never received a response to his BP-8s is fatal to his claims under *Bivens*. *Johnson*, 569 F.3d at 45 (upholding dismissal for failure to exhaust); *De La Motte v. Menifee,* 40 F. App'x 639, 639–40 (2d Cir. 2002) (same).

<u>Lockwood</u>, 2015 WL 4461597, at *3.

S. Ct. 1850, 1859-1860 (2016).  (Docket Entry # 20, pp. 7-14).

Respondent disagrees.  (Docket Entry # 12, pp. 7-8).

The Court in Ross set out three exceptions to the statutory

exhaustion requirement in a Bivens[19] action under the Prison

Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).

Ross, 136 S. Ct. at 1856-1860.  The exceptions apply: (1) when

the administrative procedure "operates as a simple dead end,"

id. at 1859 ("an administrative procedure is unavailable when

(despite what regulations or guidance materials may promise) it

operates as a simple dead end"); (2) when an "administrative

scheme" is "so opaque that it becomes, practically speaking,

incapable of use," id.; and (3) "when prison administrators

thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation."  Id.

at 1860.

Because the PLRA "does not apply to habeas corpus

proceedings," Korobov v. Angeli, Civil No. 1:CV-07-1274, 2008 WL

2787874, at *1 (M.D. Pa. July 17, 2008),[20] yet both petitioner

and respondent address the exceptions in Ross, this court will

_____

[19]  Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics, 403 U.S. 388 (1971).
[20]  The exhaustion requirement of section 2241 petitions
challenging sentence calculations "is a judge-made requirement."
Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015);
accord Fazzini v. Ne. Ohio Corr. Ctr., 473 F.3d 229, 235 (6th
Cir. 2006) ("in contrast to the PLRA, § 2241's exhaustion
requirement is not statutorily required").

assume dubitante their application.  Turning to the first exception, petitioner maintains he never received the October 5, 2015 denial letter.  (Docket Entry # 20, p. 9).  As explained previously, the evidence is to the contrary.  (Docket Entry # 23-1).  Petitioner was not met "with officers unable or consistently unwilling to provide any relief."  Ross, 136 S. Ct. at 1859.  Rather, he did not avail himself of the relief provided by timely filing a BP-9 to the Warden or seeking an extension of time to file one.  See 28 C.F.R. § 542.14. Accordingly, the dead-end exception in Ross does not apply.

A similar exception applies to the exhaustion requirements under section 2241.[21]  See Williams v. Willis, 765 F. App'x 83 (5th Cir. 2019) (unpublished).  Specifically, exceptions "'are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action.'"  Id. (quoting Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994)).  The Tenth and Sixth

---

[21]  Petitioner points out that habeas exhaustion requirements are slightly different from PLRA exhaustion requirements because the former allow exceptions for futility and irreparable harm. (Docket Entry # 20, p. 11) (citing United States v. McGriff, 468 F. Supp. 2d 445, 447 (E.D.N.Y. 2007)).  As explained in McGriff, a court may "dispense with the exhaustion requirement 'if it appears that an administrative appeal would be futile, or because the appeals process is shown to be inadequate to prevent irreparable harm to the defendant.'"  Id. (citation omitted)

Circuits also recognize a futility exception to the exhaustion requirement applicable to section 2241 petitions.  See Garza v. Davis, 596 F.3d 1198, 1203-04 (10th Cir. 2010); Fazzini v. Ne. Ohio Corr. Ctr., 473 F.3d at 236 ("habeas exhaustion requirement" for section 2241 petition "may be excused where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks"); see also Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003) (recognizing futility exception to judicially-imposed exhaustion requirements).  Although a futility exception applies to section 2241 petitions, it is not appropriate under the circumstances at bar.  Having received a copy of the denial letter, petitioner's failure to meet the 20-day deadline to appeal the October 5, 2015 denial and submit a timely BP-9 does not render the process futile.  In fact, allowing a futility exception under these circumstances would encourage petitioners to bypass the deadline and defeat the purpose of the exhaustion doctrine.  See Laing v. Ashcroft, 370 F.3d 994, 999 (9th Cir. 2004) (rejecting futility argument in context of section 2241 petition for alien who bypassed deadline because "allow[ing] a party to hopscotch over judicial review requirements by simply waiting for them to expire would eviscerate the exhaustion doctrine").

    With respect to the second Ross exception, the process was not opaque.  The applicable regulations spell out the deadline

in a straight-forward manner.  See 28 C.F.R. §§ 542.13, 542.14.

They are not "'so confusing that . . . no reasonable prisoner

can use them.'"  Ross v. Blake, 136 S. Ct. at 1859 (internal

citation omitted).  A supplement to the administration remedies

program at FCI Coleman further explains that, "Upon completion

of the informal resolution process, an inmate may file a formal

complaint to the Warden on a Request for Administrative Remedy

Form (BP-9)."  (Docket Entry # 23-1, p. 8, ¶ 7).  Here again,

petitioner received the October 5, 2015 denial and filed

multiple informal requests without filing a timely BP-9 appeal

to the warden.  Although he alleges that a staff member at FCI

Oakdale told him the July 2015 inmate request "had not been

resolved as of October 13, 2016" (Docket Entry # 20, p. 9), he

does not adequately support the argument.  The October 2016

inmate request he made at FCI Oakdale, which petitioner cites as

support, simply consists of a duplicate request for credit to

his federal sentence.  If a duplicate request satisfies this

second exception in Ross, then the mere filing of such a request

would nullify the exhaustion requirement and defeat its purpose.

Petitioner's reliance on the January and August 2019 inmate

requests (Docket Entry # 20, p. 10) (Docket Entry # 20-1, pp. 9-

12) fail to justify the exception for the same reason.  The

erroneous response to the May 2016 inmate request was an obvious

error because it references a start date of October 18, 2010 for

the federal sentence.  (Docket Entry # 20-1, p. 6) (Docket Entry # 23-2, p. 1, ¶ 3).  In short, the repeated submissions of these inmate requests do not render the process opaque.

Turning to the third exception in Ross, petitioner maintains that staff repeatedly instructed him to start the process again, refused to respond to the initial requests, and never provided him with the October 15, 2015 denial letter.  As explained by the court in Leonard v. Fed. Bureau of Prisons, No. 3-06-CV-1322-N, 2007 WL 1703638 (N.D. Tex. June 13, 2007):

> [M]isconduct of prison officials in connection with an inmate's attempt to exhaust may render administrative remedies unavailable and, thus, preclude a defendant from raising failure to exhaust as an affirmative defense.  See Aceves v. Swanson, 75 Fed. App'x 295, 296 (5th Cir. 2003) (per curiam) (administrative remedies were unavailable because prison authorities repeatedly refused or failed to give an inmate the appropriate grievance forms despite his requests); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (same); see also Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (affirmative defense of exhaustion is subject to estoppel if prison officials preclude the inmate from exhausting administrative remedies); Boyd v. Corrections Corp. of America, 380 F.3d 989, 996-97 (6th Cir. 2004) (prison officials' failure to respond to prison grievances rendered administrative remedies unavailable).

Leonard, 2007 WL 1703638, at *4 n.5.

The factual record, however, does not support petitioner's argument that staff did not provide him inmate request forms or a BP-9.  He also received October 2015 denial letter notwithstanding his assertion to the contrary.  His argument that his placement in SHU, which took place well after the 20-

day time period to file an appeal in October 2015, and his transfer to two BOP facilities (Docket Entry # 20, p. 7) do not warrant excusing the exhaustion requirement.  See Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002) ("fact that" inmate was "prisoner in various locations, and under the custody of different officials, does not affect his obligation to exhaust his administrative remedies before filing suit") (applying PLRA); Lamerique v. United States, Civil Action No 3:18-CV-00532, 2019 WL 2932673, at *9 (S.D. W. Va. June 14, 2019), report and recommendation adopted, 2019 WL 2929035 (S.D. W. Va. July 8, 2019).

Finally, to the extent petitioner relies on irreparable harm to excuse exhaustion (Docket Entry # 20, p. 11),[22] the exception does not apply.  The appeals process was not "'inadequate to prevent irreparable harm to [petitioner],'" United States v. McGriff, 468 F. Supp. 2d at 447, because he received the denial letter and did not avail himself of the opportunity to file a formal administrative appeal to the warden within the required time frame.  In fact, he did not file a BP-9 until February 2019.  (Docket Entry # 20-1, p. 29).

In sum, petitioner failed to exhaust his administrative remedies.  He does not fall within an exception for such

---

[22]  See the previous footnote.

exhaustion.   The petition is therefore subject to dismissal without prejudice for lack of exhaustion.[23]   See <u>Mathena v. United States</u>, 577 F.3d 943, 946 (8th Cir. 2009); <u>Sandoval v. Booker</u>, 141 F.3d 1185 (10th Cir. 1998) (unpublished); <u>see also</u> <u>Smith v. Spaulding</u>, Case No. 1:19-CV-10112-KAR, 2019 WL 6699455, at *4 (D. Mass. Dec. 9, 2019).

Finally, out of an abundance of caution, this court addresses the merits of the sentence calculation solely as an alternative basis to dismiss the petition.   Addressing the merits is not intended to bypass the independent basis to dismiss the petition without prejudice for lack of exhaustion.

II. <u>Petitioner's Sentence Calculation</u>

Petitioner argues that the BOP incorrectly calculated the federal sentence, and that he qualifies for "credit for prior custody under the literal terms of 18 U.S.C. § 3585(b)(2)." (Docket Entry # 1, p. 6).   He reasons that his "arrest for the state charges" on March 18, 2005 "was subsequent to" the conduct that served the basis for the federal offense.   (Docket Entry # 1, p. 6).   Respondent maintains the BOP properly calculated the sentence.   (Docket Entry # 12, pp. 8-11).

---

[23]   Because the petition fails on the merits, it is subject to a dismissal with prejudice absent reconsideration or reversal of the sentence calculation.

Section 3585 governs the proper method to calculate a federal term of imprisonment regarding credit for time spent in prior custody.  Capaldo, 2004 WL 1454408 at *3 ("section 3585 governs all sentence computations").  The provision reads as follows:

> (a) Commencement of sentence--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of a sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—-
>
> > (1) as a result of the offense for which the offense was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited to another sentence*.

18 U.S.C. § 3585 (emphasis added and bold font omitted)).

The final clause dispels petitioner's argument.  The language of the last clause "makes 'clear that a defendant [can]not receive a double credit for his detention time.'" United States v. Wetmore, 700 F.3d 570, 576 n.3 (1st Cir. 2012) (quoting United States v. Wilson, 503 U.S. 329, 337 (1992)) (brackets in original).  Petitioner already received credit for the time against the Commonwealth sentence.  See id. at 576

("credit is only available if the detention time 'has not been credited against another sentence'" and defendant's "time in detention between the beginning of his state sentence and the start of his federal sentence *was* credited against his state sentence"). He therefore cannot double count this time as a credit against the federal sentence. Id. Furthermore, the concurrent designation by the Commonwealth court of the sentence imposed by that court "is not binding on federal authorities." Wright v. Hudson, No. 9:12-CV-01638-JKS, 2015 WL 5971055, at *5 (N.D.N.Y. Oct. 14, 2015) (rejecting argument that federal sentence ran concurrently because state court believed state and federal sentences ran concurrently); accord United States v. Eccleston, 521 F.3d 1249, 1254 (10th Cir. 2008) (although petitioner's "state sentence provides for concurrent service of the federal and state sentences, the state court's decision cannot alter the federal-court sentence").

The BOP's computation was also correct. Computing petitioner's federal sentence under section 3585 entails a determination of: "(1) when the [federal] sentence *commences* and (2) to what extent the defendant . . . may receive *credit* for any time already spent in custody." Jimenez I, 147 F. Supp. 2d at 27 (emphasis added). Petitioner's federal sentence commenced on March 26, 2015, when the USMS took petitioner into custody to serve the federal sentence. See Capaldo, 2004 WL 1454408, at

\*3; Jimenez I, 147 F. Supp. 2d at 28 ("primary jurisdiction over a state prisoner ends and federal custody over him commences" when "state authorities relinquish him on satisfaction or extinguishment of the state obligation"); see also Newman, 526 F. App'x at 821.

As to credit, petitioner's March 18, 2005 arrest in the Commonwealth of Puerto Rico case preceded the December 2005 arrest and/or custody of petitioner in the federal case.  As previously explained, "primary jurisdiction resides with the sovereign that first arrests a defendant."  Thomas v. Warden, 2015 WL 502144, at \*4; accord Johnson v. Gill, 883 F.3d at 764-765; United States v. Cole, 416 F.3d at 897 (as between "state and federal sovereigns, primary jurisdiction over" a defendant "determined by which one first obtains custody of, or arrests, the person"); Thomas v. Whalen, 962 F.2d at 362 n.7; Jimenez I, 147 F. Supp. 2d at 28 ("sovereign which first arrests a defendant has primary jurisdiction over him").  As also determined in the factual background, the Commonwealth of Puerto Rico did not relinquish custody of petitioner by loaning him to the USMS under the December 2005 writ of habeas corpus ad prosequendum.  See Jimenez I, 147 F. Supp. 2d at 28; accord United States v. White, 874 F.3d at 507; United States v. Mills, 501 F.3d 9, 11 (1st Cir. 2007) ("'issuance of the writ of habeas corpus ad prosequendum did not alter [the prisoner's] custody

37

status'") (quoting Sinito v. Kindt, 954 F.2d 467, 470 (7th Cir.
1992), in parenthetical); Thomas v. Whalen, 962 F.2d at 361 n.3.
Petitioner's argument that his arrest by Commonwealth of Puerto
Rico authorities came after the conduct that formed the basis
for the federal charges therefore fails to justify the jail-time
credit he seeks.

Petitioner also contends that section 3621(b) allows the
BOP to make a *nunc pro tunc* designation of MDC as a federal
facility and thereby credit the federal sentence with the
pretrial detention time he served in MDC. (Docket Entry # 20,
p. 14). It is true that the BOP has the discretion to make a
*nunc pro tunc* designation of "'the state institution for service
of that federal sentence.'" Sweat v. Grondolsky, 898 F. Supp.
2d 347, 351 (D. Mass. 2012) (quoting Ysabel v. Sabol, 645 F.
Supp. 2d 37, 39 (D. Mass. 2009)); see Barden, 921 F.2d at 478;
United States v. Smith, 812 F. Supp. 368, 370 (E.D.N.Y. 1993)
(when "federal court imposes a sentence on a defendant who is
already in state custody, the federal sentence may commence if
and when" BOP "agrees to designate the state facility for
service of the federal sentence") (citing Barden, 921 F.2d at
481-482). The BOP exercised that discretion and determined a
*nunc pro tunc* designation was inappropriate. Specifically, the
DSCC Chief wrote to the sentencing judge and received no
response. (Docket Entry # 12-1, pp. 32-33); see 18 U.S.C. §

3621(b)(4).  The BOP official then considered pertinent factors
under section 3621(b), fairly considered and applied them, and
concluded a *nunc pro tunc* designation was not advisable.
(Docket Entry # 12-1, p. 65).  Thereafter, Roush informed
petitioner about the denial in the October 5, 2015 letter.
(Docket Entry # 23-1, p. 5).  Accordingly, the BOP's decision to
reject a *nunc pro tunc* designation was not an abuse of
discretion.  See Ysabel v. Sabol, 645 F. Supp. 2d at 39-41; see
also Wright v. Hudson, 2015 WL 5971055, at *5 (finding "full and
fair consideration to Wright's *nunc pro tunc* request" and
therefore "BOP did not abuse its discretion in denying Wright's
request").

Next, petitioner maintains that a designation is not
necessary because MDC is a federal facility.  (Docket Entry #
20, pp. 14-17).  Again, pursuant to the doctrine of primary
jurisdiction doctrine, "[t]he first sovereign to take physical
custody of a defendant retains 'primary jurisdiction' until
releasing that jurisdiction."  Elwell v. Fisher, 716 F.3d 477,
481 (8th Cir. 2013) (citation omitted).  The Commonwealth of
Puerto Rico took physical custody of petitioner first by virtue
of arresting him in March 2005.  See Jimenez I, 147 F. Supp. 2d
at 28.  Removing petitioner from the Complejo Correctional Las
Cucharas facility in Ponce under the writ *ad prosequendum* for
federal prosecution and housing him at MDC did not relinquish

that primary jurisdiction.  See id. at 28; accord United States
v. White, 874 F.3d at 507; Thomas v. Whalen, 962 F.2d at 362
n.7.  Simply stated, "'a defendant held at a federal detention
facility is not "in custody" for the purposes of commencement of
a federal sentence when he is produced through a writ of habeas
corpus ad prosequendum.'"  Wright v. Hudson, 2015 WL 5971055, at
*4 (quoting United States v. Fermin, 252 F.3d 102, 108 n.10 (2d
Cir. 2001, in parenthetical) (internal brackets omitted).
Under the facts presented, physical custody of petitioner at
MDC, a federal facility, therefore did not release the primary
jurisdiction retained by the Commonwealth of Puerto Rico.

       In sum, petitioner did not exhaust his administrative
remedies in a timely manner.  The exceptions for failing to
exhaust such remedies do not apply.  The BOP properly calculated
the federal sentence, denied credit for the time served at MDC,
and denied the requested *nunc pro tunc* designation.[24]  Habeas
relief is not warranted.

---

[24]  To the extent petitioner makes a separate request for good-
time credit (Docket Entry # 1, p. 2) (Docket Entry # 20, p. 2)
("ask[ing] to be credited for the good time for his sentence
served in Commonwealth prison" and noting "[t]his request has
already been granted to [t]wo of [p]etitioner's co-defendants"),
he does not adequately develop the argument, which is therefore
waived.  See Curet-Velázquez v. ACEMLA de Puerto Rico, Inc., 656
F.3d 47, 54 (1st Cir. 2011) ("[a]rguments alluded to but not
properly developed before a magistrate judge are deemed
waived"); Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44
(1st Cir. 2010); see also McDonough v. Donahoe, 673 F.3d 41, 49
(1st Cir. 2012).

CONCLUSION

In accordance with the foregoing, the motion to dismiss (Docket Entry # 11) is **ALLOWED** and the petition is **DISMISSED**.

                    /s/ Marianne B. Bowler   _
                    **MARIANNE B. BOWLER**
                    United States Magistrate Judge